# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

F I L E D

SEP 2 3 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

MICHAEL WOODS, *pro se*

SA21CA0913 **FB**

Plaintiff,

Civil Action No.:_____

v.

Jury Trial Demanded

FARMERS GROUP, INC.,
a Foreign Owned Nevada corporation,

Complaint-Civil Action

Defendant.

## CIVIL ACTION COMPLAINT

1

Michael Woods ("Plaintiff"), proceeding *pro se,* brings this action against Defendant Farmers Group, Inc., ("FGI" or "Defendant"). Plaintiff's allegations are based upon personal knowledge, documentation, information, and belief.

## I. **INTRODUCTION**

1.      Against Public Policy and in contradiction of Sabine Pilot, FGI (a foreign owned control corporation) ended Plaintiff's thirty-year career by illegally terminating Plaintiff's appointment with Farmers Insurance Group of Companies solely because Plaintiff refused to engage in illegal, discriminatory, and criminal conduct described herein.

2.      Beginning in 2015, to unjustly enrich itself by increasing the amount of premium collected from Farmers policyholders, FGI began a nationwide rollout of a new series of insurance policies called FARMERS SMART PLAN ("FSP") insurance policies. FSP insurance policies offer the same coverage as existing or current Farmers insurance policies but at lower rates.

3.      Farmers agents were instructed to only offer the lower priced FSP policy to solicit applications for new customers and withhold the lower priced policy from existing policyholders who will continue to pay higher rates for the same coverage.

4.      Plaintiff knows from prior experience that offering low insurance rates to lure in new policyholders while at the same time charging existing policyholders higher rates for the same coverage violates insurance laws of virtually every State including, but not limited to, Texas Insurance Code § 544.052 and § 2251.051.

5.      Nonetheless, on January 4, 2016, FGI introduced FARMERS SMART PLAN AUTO ("FSPA") in Texas. FSPA rates are on average 20% to 40% lower than existing FARMERS AUTO 2 ("FA2") insurance policies.

6.      FGI aggressively instructed Farmers agents to only offer the lower priced FSPA to grow new business and agents were cautioned of consequences if they offer the lower priced FSPA to existing FA2 policyholders who continue to pay higher rates (sometimes substantially higher rates) for the same coverage.

7.      One of the consequences FGI implemented (to financially punish Farmers agents who follow Texas law by offering the lower priced FSPA to existing FA2 policyholders) was a one-third cut of all policy commissions and a newly implemented bonus program which FGI dishonestly claimed would allow agents to recover the significant 1/3 reduction in agent income.

8.     To qualify for a bonus agents must maintain a high *"policy retention rate"* (i.e., having a large majority of policyholders continue to renew existing policies). However, FGI informed Plaintiff that rewriting (transferring) an FA2 policy to the lower priced FSPA will lower policy retention rates and prevent Plaintiff from qualifying for a bonus. In this obvious abuse of power, FGI financially penalized Plaintiff (by cutting his income by 1/3) for refusing to aid and abet FGI in criminal conduct as defined in the Texas Insurance Code § 942.159.

9.      As the ultimate strongarm tactic to try and force Plaintiff to be complicit in FGI's violation of Texas law, FGI threatened to end Plaintiff's thirty-year career by terminating his appointment agreement and assign Plaintiff's *"orphaned policies"* (with commissions) to agents who, willingly or not, obey FGI's illegal mandate to only offer lower rates to solicit applications for new customer and conceal the lower priced FSPA from existing FA2 policyholders who pay a higher rate for the same coverage.

10.    Plaintiff repeatedly stated he would not engage in FGI's illicit pricing scheme but would obey Texas law including Texas Insurance code § 4005.101 which prohibits insurance agents from violating Texas law and/or engaging in fraudulent or dishonest acts. Rather than engage in FGI's unquestionable illegal and discriminatory pricing practice of concealing the lower priced FSPA from existing FA2 policyholders, Plaintiff continued to follow Texas law and offered the lower priced FSPA to his existing FA2 policyholders.

11.    FGI's illegal pricing practice became the single cause of action of a class action lawsuit in which one of Plaintiff's policyholders since 1997, Robert Vale, served as Class Representative. The original complaint: 1-17-cv-88, *CHARLES GRIGSON and ROBERT VALE, individually and on behalf of others similarly situated v. Farmers Group, Inc., a Nevada Corporation,* (*"GRIGSON"*) was filed on February 8, 2017, in the US District Court, Western District, Austin Division. (Court documents are available at http://farmerstexassettlement.com/)

12.    Robert Vale relocated for work related reasons and could not continue serving as Class Representative. He was replaced with two new Class Representatives one of which was Plaintiff's policyholder since 1996, David Kelly. The amended complaint was filed October 22, 2018, and includes the following fact:

> *"...Kelly's agent, Mr. Michael Woods, **retrieved** through a FGI web-based platform **a side-by-side comparison of**(a): Plaintiff Kelly's then-current **FA2 premium and coverages** ($1,064.00); and, (b) **a quote** using FGI's rating algorithm **for an FSPA premium**[with] **identical or materially the same coverages."** (First Amended Complaint @ 96 emphasis added)

13.     As emphasized in the above fact, Farmers agents can retrieve side-by-side comparisons of a policyholder's current FA2 rates and rates for an FSPA with the same coverage. In nearly every side-by-side comparison retrieved for his existing policyholders, FA2 policyholders paid less (sometimes substantially less) when rewritten to the lower priced FSPA with the same coverage. For example, Class Representative David Kelly's FA2 premium was $1064.00 and his FSPA premium was $370.00. When his FA2 policy was rewritten to FSPA, Kelly saved $694.00 every six months (approximately 65%). Robert Vale, who was an original Class Representative, obtained a six-month savings of $205.00 (approximately 26%) after his FA2 priced at $793.00 was rewritten to the FSPA with a price of $588.00.

14.     Not unsurprisingly, FGI eliminated the agent's ability to retrieve side-by-side comparisons with the nationwide rollout of a lower priced Commercial Auto and lower priced Workers Compensation policies to be offered for new business only. Currently, agents must call (but are strongly encouraged not to call) FGI's service center and plead for the lower rates for existing commercial auto and workers compensation policyholders. Agent's requests are generally unsuccessful.

15.     In June 2019, after failing to provide an acceptable explanation for the illegal and discriminatory pricing practice, FGI's general counsel personally engaged in settlement discussions with *GRIGSON* class counsel which eventually led to a $52 million settlement. However, even while engaged in settlement negotiations, FGI persisted in utilizing aggressive and intimidating tactics in attempts to pressure Plaintiff to participate in FGI's illegal pricing program.

16.     On or about July 9, 2019, FGI sent two employees to Plaintiff's office who expressed strong disapproval of Plaintiff's *"low policy retention"*. Plaintiff explained FGI's dishonest method of insisting that rewriting an FA2 policy is a loss of business even though the agent retains the policyholder's business with the FSPA policy which is issued in place of the FA2. Nevertheless, FGI's employees warned that continuing to show a low policy retention rate jeopardizes the continuation of Plaintiff's appointment as a Farmers agent.

17.     Plaintiff respectfully explained to the FGI employees, the Texas Insurance Code states that offering lower rates for the FSPA while charging existing FA2 policyholders a higher rate for the same coverage is illegal and considered unfair discrimination. Plaintiff reiterated he would not be intimidated into engaging in FGI's illegal and discriminatory pricing practice.

18.     On December 5, 2019, FGI's employees returned to Plaintiff's office and gave notice that FGI will be terminating Plaintiff's appointment as a Farmers agent. This was unquestionably retaliation for Plaintiff's refusal to be complicit in FGI's illegal and discriminatory pricing program designed only for FGI's unjust enrichment.

19.     After repeated attempts to coerce Plaintiff to illegally conceal the lower priced FSPA from existing FA2 policyholders and; after the reprehensible act of applying financial duress by reducing his income by 1/3 to pressure Plaintiff into violating Texas insurance law and; after threatening to cancel his appointment if he continued refusing to comply with FGI's illegal demands: FGI processed the termination of Plaintiff's appointment agreement on March 5, 2020, and issued a warning of additional financial consequences if Plaintiff violated a one year non-compete clause.

20.     Adding insult to Plaintiff's injuries, FGI's termination of Plaintiff's appointment violated Texas Insurance Code § 4051.353 which requires six-month written notice before terminating an agent's appointment if the appointment has been in effect for over two years. Plaintiff's appointment was in effect since 1991.

21.     FGI's action was deliberately and maliciously intended to inflict severe financial injury to Plaintiff considering that: FGI knowingly processed the termination of Plaintiff's appointment on March 5, 2020, which was a full month after the Secretary of Health announced a Public Health Crises (due to the Coronavirus) and the nation was shutting down all non-essential business leaving Plaintiff without any method of earning an income.

22.     FGI's calculated act of retribution at the beginning of a Covid-19 shutdown of all non-essential business was committed with malice and intended to, and had the effect of, inflicting extreme financial and mental harm to Plaintiff.

23.     Additionally, FGI's act of retribution at the beginning of the Covid-19 pandemic was intentionally designed to, and had the effect of, setting an example for all Farmers agents (not just in Texas but nationwide) what they can expect if they refuse to participate in FGI's self-enriching illegal pricing strategy.

24.     FGI's malicious act of terminating Plaintiffs appointment based solely on Plaintiffs refusal to engage in illegal conduct is against public policy and contradicts the intent of Sabine Pilot. Plaintiff seeks economic damages, non-economic damages, and other relief as set forth herein.

## II.    **PARTIES**

25.    Plaintiff Michael Woods, proceeding *pro se*, is a resident of Bexar County Texas. Plaintiff has held an insurance license in Texas since October 02, 1990, and was appointed with Farmers Insurance Group of Companies from June 16, 1991 until March 5, 2020, when Defendant terminated Plaintiff's appointment agreement.

26.    Defendant Farmers Group, Inc., ("FGI" or "Defendant") is a foreign owned corporation with its principal place of business located at 6303 Owensmouth Ave., Woodland Hills, California, 91367. FGI may be served through its registered agent in Texas: Corporation Service Company doing business as CSC-Lawyers Inc, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

27.    FGI describes itself as not being an insurer, but a company engaged in the business of insurance. Except for claims handling, FGI maintains exclusive authority and control over every aspect of the Farmers Insurance Group of Companies. FGI performs all insurance related services alleged herein including, but not limited to, design and production of insurance policies, underwriting, pricing, and issuance of all Farmers insurance policies, and collection of premiums.

28.    Additionally, FGI maintains authority and control over Farmers Agents including, but not limited to, setting requirements to become an agent, training, supervision, bonus requirements, and appointment or termination of Farmers agents.

29.    FGI retains a substantial percentage of all premiums paid by Farmers Insurance policyholders as a fee for providing its services. FGI is unjustly enriched by illegally increasing the amount of premium collected from Farmers policyholders.

30.    FGI is wholly owned by Zurich Insurance Group ("Zurich"), an alien insurance company based in Zurich, Switzerland. Neither Zurich nor FGI have any ownership interest in the Farmers Insurance Group of Companies. However, FGI does wholly own Farmers New World Life Insurance Company.

31.    It's undeniable that FGI maintains complete authority and control over Farmers Insurance Group of Companies, issuance of insurance policies, and the appointment agreement for Farmers agents. Furthermore, FGI uses its centralized control to pressure agents to assist FGI in the illegal conduct described herein

32.    FGI is the party responsible for, *inter alia*, retaliation against Plaintiff by wrongfully terminating his Agency Appointment Agreement based solely on Plaintiff's refusal (under duress) to violate Texas law.

### III.   JURISDICTION AND VENUE

33.    This Court has original jurisdiction over this action pursuant to U.S. Code § 1332 Title 28 because (a) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost, and (b) is between citizens of different States; and (c) none of the exemptions apply to this action.

34.    This Court has personal jurisdiction over FGI because FGI is registered to do business in Texas, has appropriate and adequate contacts in Texas, and otherwise avails itself in Texas through its business activities such that this Court has appropriate and necessary Jurisdiction.

35.    Venue is proper because Plaintiff Michael Woods resides in this District and a substantial part of the events given rise to this action took place in this District.

### IV.   FACTUAL ALLEGATIONS

#### A. FGI Controls Farmers Insurance Group Of Companies and Insurance Policies.

36.    Farmers Insurance Group of Companies are property and casualty insurers comprised of three interinsurance (also called reciprocal) exchanges and their subsidiaries. The three interinsurance exchanges, which are domiciled in California, are Farmers Insurance Exchange, Fire Insurance Exchange, and Truck Insurance Exchange (collectively called the "Farmers Exchanges").

37.    The Farmers Exchanges were formed for the purpose of providing property and casualty insurance and are regulated by Texas law which allows interinsurance exchanges to operate in Texas but precludes interinsurance exchanges from engaging in any form of life insurance including traditional life insurance, variable life insurance, or investment products. Texas Insurance Code § 942.002. *SUBSCRIBER INSURANCE COVERAGE THROUGH EXCHANGE AUTHORIZED; LIFE INSURANCE PROHIBITED.*

38.    As part of the application for insurance with the Farmers Exchanges, prospective policyholders are required to sign a subscription agreement appointing FGI as Attorney-In-Fact ("AIF") and in that capacity, FGI controls the operations of the Farmers Insurance Group of Companies including issuing insurance policies as defined in Texas Insurance Code § 942.001: (1)*Attorney in fact means an individual, firm, or corporation who...acts for subscribers of an exchange by issuing reciprocal or interinsurance contracts...(3) interinsurance contract means an insurance policy...*

7

39.     FGI's duties regarding Farmers insurance policies include, but are not limited to, the design, content, pricing, underwriting, and issuance of every Farmers insurance policy. FGI does not deny having exclusive authority and control over Farmers insurance policies. Texas Law recognizes the AIF controls the issuance of all insurance policies for an interinsurance exchange and the AIF commits a criminal offence when issuing an insurance policy that does not comply with Texas law:

> Texas Insurance Code § 942.159: *A VIOLATION BY ATTORNEY IN FACT OF REQUIREMENTS REGARDING INDEMNITY CONTRACTS; CRIMINAL PENALTY.(a) An attorney in fact commits an offense if the attorney in fact:(1) exchanges a reciprocal or interinsurance contract without first complying with the law governing the contract; or(2) directly or indirectly solicits or negotiates an application for the contract without first complying with the law governing the contract.*

40.     FGI's exclusive authority and control of content, pricing, and issuance of all Farmers insurance policies and FGI's criminal accountability for directly or indirectly soliciting an application for insurance or issuing an insurance policy without *"first complying with the law governing the contract"* is relevant to Plaintiff's claim.

### B. FGI's Introduction Of FSPA Violates Texas Law.

41.     FGI introduced the FSPA in January 2016. The FSPA has lower rates than existing FA2 policies with the same coverage. Texas law prohibits the discriminatory practice of charging different rates for individuals of the same class or hazard:

> Texas Insurance Code § 544.052. *UNFAIR DISCRIMINATION. A person may not in any manner engage in unfair discrimination or permit unfair discrimination between individuals of the same class and of essentially the same hazard, including unfair discrimination in: (1) the amount of premium, policy fees, or rates charged for a policy or contract of insurance;*

42.     FA2 policyholders are *"individuals of the same class and of essentially the same hazard"*. Moreover, FA2 policyholders are an identical class and identical hazard in side-by-side comparisons of the higher priced FA2 and lower priced FSPA for the same policyholder with the same coverage. FGI violates Texas Insurance Code § 544.052 when issuing a new business FSPA with lower rates than an existing FA2.

43.     Additionally, Texas Insurance Code § 2251.051 states that *"A rate is unfairly discriminatory if the rate: is not based on sound actuarial principles"*. However, FGI introduced the FSPA as a product with low rates based only on enticing new business and FGI echoed that fact when introducing Commercial Auto.

44.     In August 2016, FGI sent notification to Farmers agents in Kansas and Texas regarding the October 1, 2016, roll-out of a lower priced Commercial Auto Policy for new business only. FGI's notification proclaimed the new Commercial product is *"a rating methodology...for new business only..."*. FGI is aware the rates for insurance policies are to be actuarially based. Nonetheless, FGI discloses the lower priced Commercial Auto policy is merely *"a rating methodology"* utilized as an enticement to grow new business while existing policyholders continue to pay higher rates for the same coverage. The desire to increase corporate profits, by enticing new customers with the offer of low rates while charging existing policyholders a higher rate for the same coverage, is not a sound actuarial basis for rating insurance policies.

45.     On December 11, 2019, a Proposed Settlement Agreement for *GRIGSON* was filed in Federal Court in which FGI agreed to pay forty million dollars for damages to the Settlement Class plus twelve million dollars for attorney fees. ($52 million total)

46.     However, the $52 million dollar settlement did not curtail FGI from continuing the illegal and discriminatory pricing practice. Texas agents were presented with the following so called *"refresh"* of auto insurance rates effective just weeks after December 11, 2019, when the Proposed Settlement Agreement was filed:

> Smart Plan Auto New Business  -4.6% Effective December 24, 2019
> FA2 Renewal Business +1.0% Effective January 23, 2020
> Smart Plan Auto Renewal Business +2.1% Effective January 23, 2020

47.     FGI reduced (the already low new business FSPA rates) by 4.6% and emphasized *"On average, New Business quoted premiums will decrease 6.4%"*. FGI stressed the lowered FSPA rates will only be offered to solicit new business. At the same time, FGI informed Farmers agents that all existing FA2 and FSPA policyholders will receive rate increases on renewal. FGI asserted *"In the FA2...the majority of our customers will experience less than 2 percent change at renewal"*.

48.     According to FGI's presentation, in States where FGI implemented a similar auto insurance rate *"refresh"* resulted in an additional 12% to 14% increase in premium collected from Farmers policyholders. To make matters worse for Farmers policyholders, FGI continued raising rates on FSPA and FA2 policies (every six-month renewal) throughout the Covid-19 shutdown when many policyholders faced financial hardship when they became unemployed and no longer needed to drive to work.

49.     FGI's illegal pricing practice which violates Texas Insurance Codes § 544.052, § 2251.051, and § 942.159 is an important component of Plaintiff's claim.

## C. **FGI Has Exclusive Control Of The Agent Appointment Agreement.**

50.     Farmers Insurance Group of Companies do not maintain a human resources division, a payroll department, or provide management of Farmers Agents because those duties are performed by FGI as confirmed in testimony of FGI's *"corporate litigation supervisor"* in August 2016.

51.     Therefore, FGI has exclusive authority and control over the Farmers Insurance Group of Companies Agent Appointment Agreement including, but not limited to, content and design of the agreement, duties of the parties, and processing the appointment and/or termination of Farmers insurance agents.

52.     FGI Employees prepare the appointment agreement, explain the agreement to the prospective agent, and sign the agreement as an authorized representative for the companies listed on the agreement.

53.     Employees of FGI prepare individual appointment agreements and include a list of the Farmers Insurance Group of Companies applicable for the State where the prospective agent resides. For example, FARMERS **TEXAS** COUNTY MUTUAL INSURANCE COMPANY would not be included in an appointment agreement for an agent residing in California. Generally, there will be between 10 to 15 Farmers Insurance Group of Companies listed on an appointment agreement.

54.     When a prospective agent signs the appointment agreement, he or she agrees to (among other things) submit *"...every request or application for insurance..."* to the companies listed on the agreement. When the FGI employee signs the agreement, as the authorized representative for the companies listed on the agreement, he or she agrees to (among other things) pay the agent at the established commission schedule.

55.     When an FGI employee prepares the appointment agreement they knowingly include FGI's wholly owned FARMERS NEW WORLD LIFE INSURANCE COMPANY ("FNWL") in with the Farmers Insurance Group of Companies. However, the agreement appointing a Farmers Agent is explicitly titled: **FARMERS INSURANCE GROUP OF COMPANIES AGENT APPOINTMENT AGREEMENT**. FNWL is not and cannot legally be a member of the Farmers Insurance Group of Companies because the Farmers Exchanges are strictly prohibited from owning or engaging in the business of life insurance. TEXAS INSURANCE CODE § 942.002 LIFE INSURANCE PROHIBITED.

56.    Moreover, FNWL is wholly owned by FGI (and FGI is wholly owned by Zurich), while the Farmers Insurance Group of Companies are owned by policyholders. FGI already has authority and control over the agent appointment agreement, but by including FNWL on the FARMERS INSURANCE GROUP OF COMPANIES AGENT APPOINTMENT AGREEMENT, FGI and Zurich become parties of the appointment agreement and gain **absolute control** of the agreement as described below.

57.    Contained in a letter addressed to Plaintiff from FGI's Corporate Counsel dated January 11, 2017, is the following assertion: *"Please note that the agent appointment agreement is not severable with respect to individual insurance companies expressly named in the agreement"*

58.    FGI's inseverable tying of FNWL to the FARMERS INSURANCE GROUP OF COMPANIES AGENT APPOINTMENT AGREEMENT is misleading and another example of FGI's self-dealing by requiring agents to submit *"...every request or application for..."* traditional life insurance exclusively to FGI's wholly owned life company which is not a member of Farmers Insurance Group of Companies.

59.    Furthermore, the inseverable tying of FNWL to the FARMERS INSURANCE GROUP OF COMPANIES AGENT APPOINTMENT AGREEMENT solidifies FGI's absolute authority and control over Farmers agents because, FGI can terminate the agent's entire appointment agreement (with all the Farmers Insurance Group of Companies) just by terminating the single inseverable appointment with FGI's wholly owned FNWL.

60.    FGI's absolute control of FARMERS INSURANCE GROUP OF COMPANIES AGENT APPOINTMENT AGREEMENT is a significant factor in Plaintiff's claim.

## D. <u>FGI Demands Farmers Agents Engage In Illegal and Discriminatory Pricing Practice</u>

61.    FGI has centralized control over Farmers Insurance Group of Companies, Farmers insurance policies, and Farmers agent appointment agreements. Centralized control enables FGI to conduct illegal pricing practices designed to increase the amount of premium collected from policyholders which in turn, unjustly increases corporate revenue to provide additional profit for FGI's parent company Zurich.

62.    What's worse, FGI's total control of the Farmers agent appointment agreement empowers FGI to utilize aggressive, underhanded, and intimidating tactics to force Farmers agents to aid and abet FGI in carrying out the illegal pricing scheme.

63.    FGI developed policies, practices, and procedures which are maliciously designed to financially injure agents who refuse to obey FGI's illegal instructions to

conceal the lower priced FSPA from existing FA2 policyholders. FGI lowered the amount of commission paid to Farmers agents and effectively reduced agent's income by one third (1/3). Then FGI disingenuously created a bonus program and informed agents they could replace the lost income by meeting certain criteria. One of the requirements to qualify for a bonus is to maintain a high policy retention rate.

64.     FGI then informed agents that rewriting an FA2 policyholder to the FSPA is counted as a policy cancelation which lowers the agent's policy retention rate and prevents agents from qualifying for the bonus. Additionally, FGI does not grant credit (or pay new policy monies) for newly issued FSPA policies if the FSPA policy is the result of a FA2 rewrite. FGI unfairly uses the rewrite process against the agent by claiming rewriting an FA2 is a policy cancelation and is therefore a loss of business.

65.     Farmers agents who follow Texas law by offering the lower priced FSPA to existing FA2 policyholders are subjected to FGI's disingenuous accounting methods which falsely shows a low policy retention rate and FGI then claims the Farmers agent is losing business. FGI uses the phony loss of business, which is caused by FGI's false policy retention rate, against the agent and threatens to terminate the agent's appointment if the agent continues to rewrite FA2 policyholders to the FSPA.

66.     FGI knowingly implemented a financially injurious program to coerce Farmers agents into becoming accomplices to FGI's illegal pricing practice. Farmers agents who refuse to participate in FGI's illegal pricing scheme are subjected to having their Farmers appointment terminated and losing their sole source of income.

67.     Moreover, FGI demands agents only use the FSPA to solicit new applications and the appointment agreement requires agents submit *"every request or application for insurance"* to FGI. Therefore, agents aid and abet FGI in the criminal offence (as defined in Texas Insurance Code § 942.159) of *"directly or indirectly"* soliciting an application without first complying with the law governing the contract.

68.     By engaging in this conduct, FGI compels Farmers agents to assist in FGI's self-enriching scheme of illegally extracting additional premium from Farmers policyholders to increase the profits for FGI's parent company. FGI's conduct is nothing less than corporate malfeasance.

69.     FGI's (a) centralized and exclusive control of Farmers Insurance Group of Companies and;   (b) absolute control over the Farmers agent's appointment agreement and; (c) the devious, intimidating, and coercive methods of forcing Farmers agents to aid and abet FGI's illegal conduct forms the basis of Plaintiff's claim.

## V. PLAINTIFF'S INDIVIDUAL FACTS

70.     In October 1990, Plaintiff, met all criteria of the Texas Department of Insurance and became a licensed insurance agent. To his knowledge, Plaintiff has never had a complaint filed against him with the Texas Department of Insurance.

71.     On June 16, 1991, Plaintiff was appointed as a Farmers insurance agent. FGI's Regional Sales Manager prepared Plaintiff's appointment agreement, explained the agreement, obtained Plaintiff's signature, and signed the agreement as the authorized representative for the companies listed on the agreement.

72.     The Regional Sales Manager who administered Plaintiff's appointment agreement later became a State Executive Director for FGI, Senior Vice President for FGI, and Zurich's North America Regional Executive for the Southwest Division.

73.     In or about October 2015, Plaintiff attended a regional sales meeting conducted in San Antonio by FGI's State Executive Director. Plaintiff was informed of FGI's January 2016, launch of the FSPA in Texas. FGI provided Plaintiff with sales materials which contained specific instructions to only offer the lower priced FSPA for new business. The State Executive Director gave instructions not to offer the lower rates to exiting FA2 policyholders who will continue to pay higher rates than the FSPA.

74.     During thirty years of experience as an insurance agent, Plaintiff developed an understanding of the Texas Insurance Code and Deceptive Trade Practices Act. It was immediately apparent that FGI's introduction of the FSPA and instructions to conceal the lower rates from existing policyholders violates Texas law.

75.     Additionally, Plaintiff was aware that he could face disciplinary action from the Department of Insurance if he participated in illegal conduct:

> Texas Insurance code § 4005.101   *GROUNDS FOR LICENSE DENIAL OR DISCIPLINARY ACTION...(b) The department may deny a license application or discipline a license holder under this subchapter if the department determines that the applicant or license holder... (1) has wilfully* (SIC) *violated an insurance law of this state;(5) has engaged in fraudulent or dishonest acts or practices; ...*

76.     Shortly after the introduction of the FSPA, Plaintiff received an email from FGI's State Executive Director which stated agents cannot *"rewrite our current customers at this rate"*. FGI then began an aggressive campaign to coerce Plaintiff into complying with FGI's directive to only offer the lower priced FSPA for new business.

77.     FGI lawyers are aware the introduction of the lower priced FSPA and directions to hide the lower rates from existing FA2 policyholders violates several Texas laws. Therefore, FGI knowingly and deliberately attempted to force Plaintiff to engage in illegal activity by placing Plaintiff under duress (eventually extreme duress).

78.     Plaintiff was required to attend district meetings which strongly reaffirmed FGI's requirement to hide the FSPA from existing policyholders. On several occasions Plaintiff was visited by an FGI employee who discussed the need for Plaintiff to discontinue offering the lower priced FSPA to existing FA2 policyholders.

79.     Every time Plaintiff was approached by FGI personnel regarding his refusal to conceal the FSPA from existing FA2 policyholders, Plaintiff consistently emphasized his intent to comply with Texas law and stated he would not engage in the illegal conduct demanded by FGI.

80.     In FGI's continued attempt to coerce Plaintiff into compliance with their illegal activity, FGI altered the agent commission schedule which reduced Plaintiff's income by 1/3. Next FGI introduced a financial bonus program which was only available for agents who are (willingly or not) accomplices to FGI's illegal conduct.

81.     FGI continued in its attempts to coerce Plaintiff to engage in illegal conduct. FGI's threats intensified even after the *GRIGSON* class action was filed as evidenced on or about July 9, 2019, when two FGI employees arrived at Plaintiff's office and stated that his low retention rate jeopardizes continuation of his appointment agreement.

82.     Plaintiff discussed FGI's unfair method of calculating policy retention and Plaintiff again restated he would not engage in illegal conduct. Plaintiff referenced the Grigson class action and the allegations of FGI's violation of Texas law and repeated the Texas Insurance Code prohibits agents from engaging in illegal and dishonest acts.

83.     Plaintiff continued to refuse FGI's repeated demands to hide the lower priced FSPA from existing customers. FGI's employees then threatened to end Plaintiff's thirty-year career as a Farmers agent by terminating his agent appointment agreement with Farmers Insurance Group of Companies.

84.     When Plaintiff still refused to aid and abet FGI in the illegal and discriminatory pricing program, FGI employees returned to Plaintiff's office on December 5, 2019, and delivered notice that Plaintiff's appointment would be terminated. FGI's action was undeniably a prohibited act of retribution based solely

14

on Plaintiff's continued refusal to engage in illegal, discriminatory, and criminal conduct.

85.     FGI continuously disregards Texas law and takes several deliberate and intimidating actions (including terminating Plaintiff's appointment agreement) to coerce Farmers agents into assisting FGI in illegally extracting hard earned dollars from Farmers policyholders to provide unjust profits for Zurich.

86.     Additionally, FGI abused its power when aggressively threatening Plaintiff's job security by reduced Plaintiff's income to try and forcefully persuade Plaintiff to aid and abet FGI in their illegal conduct.

87.     FGI processed the cancelation of Plaintiff's FARMERS INSURANCE GROUP OF COMPANIES AGENT APPOINTMENT AGREEMENT only three months after giving written notice which violated another Texas law:

> Texas Insurance Code § 4051.353 NOTICE REQUIRED BEFORE TERMINATION OR SUSPENSION OF CONTRACT. *(a) An insurer may not terminate or suspend a contract with an appointed agent that has been in effect for at least two years unless the insurer provides written notice of the termination or suspension to the agent at least six months before the date the termination or suspension takes effect.*

88.     After Plaintiff worked for thirty years building and operating a Farmers insurance agency in Texas, FGI unfairly confiscated Plaintiff's agency by cancelling his appointment agreement and then distributed Plaintiff's existing policyholders to Farmers agents who (willingly or not) participate FGI's illegal conduct.

89.     FGI's wrongful termination of Plaintiff's appointment agreement was an act of retaliation based solely on Plaintiff's refusal to engage in illegal conduct. FGI's intent was to inflict financial injury and mental harm to Plaintiff.

90.     FGI's termination of Plaintiff's appointment as a Farmers agent is an indefensible act of retribution committed with malice at the beginning of the Covid-19 pandemic and nationwide shutdown of non-essential business.

91.     As a result of Defendant's conduct, Plaintiff has been economically harmed by losing his business and sole source of income when FGI terminated his appointment agreement (during an unprecedented pandemic) based exclusively on Plaintiff's refusal to engage in illegal, discriminatory, and criminal conduct.

## **PLAINTIFF'S CAUSE OF ACTION**
### **FGI Wrongfully Terminated Plaintiff's Agent Appointment Agreement Based Soley On Plaintiff's Refusal To Engage In Illegal, Discriminatory, and Criminal Conduct**

92.     Plaintiff fully incorporates all preceding allegations as if included herein.

93.     Insurance law in Texas clearly prohibits any form of discriminatory pricing practices. Section 544.052 of the Texas insurance Code states that:

> "[a] person may not in any manner engage in unfair discrimination or permit unfair discrimination between individuals of the same class and of essentially the same hazard, including unfair discrimination in ... the amount of premium, policy fees, or rates charged for a policy or contract of insurance."

94.     FGI is *"a person"* as defined by Texas law.

95.     The Texas Insurance Code § 2251.051 states that: *"A rate is unfairly discriminatory if the rate: is not based on sound actuarial principles"*.

96.     FGI knowingly disregards Texas law by unfairly discriminating against FA2 policyholders when issuing lower priced FSPA policies which are not based on sound actuarial principles.

97.     Additionally, FGI took deliberate and aggressive actions to try and force Plaintiff to engage in illegal and discriminatory conduct which could subject Plaintiff to disciplinary actions by the Texas Department of Insurance:

> Texas Insurance code § 4005.101  *b) The department may deny a license application or discipline a license holder under this subchapter if the department determines that the applicant or license holder... (1) has wilfully* (SIC) *violated an insurance law of this state;(5) has engaged in fraudulent or dishonest acts or practices;*

98.     Moreover, FGI knowingly engaged in strongarm attempts to coerce Plaintiff into aiding and abetting in FGI's commission of the criminal offense of (directly or indirectly) soliciting an application for an insurance policy and then issuing the insurance policy without first complying with Texas law:

> Texas Insurance Code § 942.159: *A VIOLATION BY ATTORNEY IN FACT OF REQUIREMENTS REGARDING INDEMNITY CONTRACTS;* **CRIMINAL PENALTY**. *(a) An* **attorney in fact commits an offense if the attorney in fact: (1) exchanges a reciprocal or interinsurance contract** *without first complying with the law governing the contract;* **or (2) directly or indirectly solicits or negotiates an application for the contract without first complying with the law governing the contract**. (Emphasis added)

99.    Plaintiff repeatedly refused to participate in illegal conduct despite FGI's continuous and aggressive attempts (including reducing Plaintiff's income by one third) to coerce Plaintiff to engage in FGI's illegal pricing practice.

100.    FGI wrongfully terminated Plaintiff's Agent Appointment Agreement solely based on Plaintiff's refusal to engage in FGI's illegal pricing activity.

101.    FGI's malicious termination of Plaintiff's appointment as a Farmers agent was deliberately intended to cause injury to Plaintiff as evidenced by FGI's processing Plaintiff's appointment termination on March 5, 2020, which was the beginning of the Covid-19 pandemic and nationwide shutdown. FGI's act of retribution was deliberately intended to deprived Plaintiff of his sole source of income and cause severe economic harm and mental anguish to Plaintiff.

102.    Additionally, FGI did not provide a six-month written notice before canceling Plaintiff's appointment as required by Texas Insurance Code § 4051.353 NOTICE REQUIRED BEFORE TERMINATION OR SUSPENSION OF CONTRACT.

103.    FGI caused financial and mental injury to Plaintiff by terminating his appointment exclusively based on Plaintiff's refusal to engage in illegal conduct which would subject Plaintiff to disciplinary actions by the Texas Department of Insurance.

104.    The wrongful termination of Plaintiff's FARMERS INSURANCE GROUP OF COMPANIES AGENT APPOINTMENT AGREEMENT was based solely on Plaintiff's refusal to engage in illegal, discriminatory, and criminal conduct and is against Public Policy and disregards the intent of Sabine Pilot.

105.    The CIVIL PRACTICE AND REMEDIES CODE allows a Plaintiff to seek economic and non-economic damages related to injury alleged in a cause of action.

106.    Additionally, Texas law allows a Plaintiff to seek exemplary damages for harm committed with malice (Intent to cause injury). FGI's act was committed with malice and the intention to cause severe financial and mental injury by knowingly terminating Plaintiff's appointment at the beginning of the Covid-19 pandemic.

107.    Pro se litigant, Michael Woods is the Plaintiff in this cause of action and has suffered serious injury caused by FGI's intentional and malicious conduct alleged above.  Plaintiff seeks to recover economic, non-economic, and exemplary damages.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following Judgement:

A. A declaration that FGI's conduct described herein was a malicious and wrongful act of retribution against public policy and in contradiction of Sabine Pilot;

B. Payment for damages and/or restitution to Plaintiff for loss of income suffered from FGI's unjust conduct in an amount to be proven at trial;

C. Exemplary damages as allowed by law for FGI's wrongful act which was committed with malice (intent to cause injury to Plaintiff);

D. Compensation for mental anguish and medical costs associated with Plaintiff's wrongful and malicious appointment termination by FGI;

E. Payment of interest as provided by rule or statute; and

F. Such other and further relief the Court may deem to be Just and proper.

Dated: September 23, 2021

RESPECTFULLY SUBMITTED,

Michael Woods
12701 West Avenue #627
San Antonio, TX 78216
Tel. 210-508-4523
michaeljwoods@sbcglobal.net